Plaintiffs, Pro-Se
Leland Damner
6619 N. Scottsdale Rd.
Scottsdale, AZ 85250
gotproof@cox.net
(602) 410 3417



# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

LELAND DAMNER, an individual,

        Plaintiff,

vs.

FACEBOOK, INC., a Delaware
corporation.

        Defendant.

Case No.:   **CV20-00911-PHX-CDB**

**COMPLAINT**

Plaintiff Leland Damner, (hereinafter "Plaintiff"), brings this action on behalf of himself against FACEBOOK, INC., a Delaware corporation.  Plaintiff hereby alleges, on information and belief, except as to those allegations which pertain to the named Plaintiff, which allegations are based on personal knowledge, as follows:

## JURISDICTION AND VENUE

1.      This Court has original jurisdiction over this action pursuant to 28 U.S.C. §1331.  The Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

2.      This Court has jurisdiction over Defendants because they conduct business in Arizona, both in connection with the facts giving rise to this lawsuit and generally, and have sufficient minimum contacts in Arizona, or otherwise

intentionally avail themselves of the markets within Arizona, through the promotion, sale, marketing and distribution of their services and products in Arizona, to render the exercise of jurisdiction by this Court proper and necessary.

3.      Venue is proper in this District pursuant to 28 U.S.C. §1391(b)(2), because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

4.      Venue is also proper in this District pursuant to 28 U.S.C. §1391(d) because Defendant Facebook, Inc. resides in this district by virtue of its contacts within this District.

## THE PARTIES

5.      Plaintiff is a resident of the city of Maricopa County, Arizona and has maintained a Facebook profile at all relevant times herein.

6.      Defendant FACEBOOK, INC. ("Facebook") is a Delaware corporation with its principal place of business in Menlo Park, California, but does business in Maricopa County, Arizona.  Facebook operates a social networking website which allows its users to interact and communicate with other individuals

## FACTUAL BACKGROUND

7.      A virtual tsunami of private information of each of Facebook's billions of users is regularly recorded into their unique Facebook profiles and stored by Facebook, including: all manner of biographical information (e.g., current and former names; alternate names; hometown; birthdate; gender; family connections; education; email address; relationship status; education and work history; interests; hobbies;

religious and political affiliations; phone number; spoken languages); current and former addresses; dates and times of active sessions on Facebook; dates and times and titles of any advertisements that were "clicked" by the Facebook user, connections with other Facebook users; communications with other Facebook users through the integrated Facebook "Messenger" application and the user Facebook inbox; current and last location; attendance at events and social gatherings; stored credit card information used to make purchases on Facebook; people the Facebook user is "friends" with or follows; Facebook groups the user is a member of; a list of IP addresses where the user has logged into and out of his or her account; posts or sites the user has "liked"; searches conducted by the user on Facebook; photographs and videos documenting all aspects of their lives and the lives of their friends and family; and their activity in Facebook-connected applications ("User Information").

8.     A vital feature of the viral spread of Facebook is the appearance of control users have over their sensitive User Information. Facebook's privacy settings purport to offer users control over the dissemination of various categories of their User Information, whether it be privately with particular individuals, with all of their Facebook friends, with friends of friends, or with all Facebook users. Users thus reasonably expect User Information will only be accessible to the extent they authorize such access.

9.     Privacy is very important to Facebook users. Facebook's CEO, Mark Zuckerberg has publicly acknowledged that people share on Facebook because "they know their privacy is going to be protected."  The security of privacy allows Facebook

4

users to feely "engage and share their content and feel free to connect because they know that their privacy is going to be protected."

10.     Facebook sets forth its data security policies in a Statement of Rights and Responsibilities and in a separate Data Policy.

11.     The opening line of Facebook's Statement of Rights and Responsibilities is unambiguous:

**1. Privacy**

Your privacy is very important to us. We designed our Data Policy to make important disclosures about how you can use Facebook to share with others and how we collect and can use your content and information. We encourage you to read the Data Policy, and to use it to help you make informed decisions.

**2. Sharing Your Content and Information**

You own all of the content and information you post on Facebook, and you can control how it is shared through your privacy and application settings. 28

12.     Facebook thus explicitly misleads its users into believing it is their right to control their User Information.

13.     Plaintiff provided his valuable personal data as consideration for use of Facebook. Plaintiff relied on Facebook's promises to secure his data as stated in the Privacy Policy.

14.     At all relevant times hereto, Facebook collected and stored User

Information from the Plaintiffs, including their biographical information, educational background, work history, birthday, hometown, family and relationship status, interests, religious and political views, history of websites visited, timeline posts, "likes," current location, online status, and activity in other applications including those controlled and maintained by Facebook.

15.    On or about April 20, 2020, Plaintiff's Facebook account was hacked by an unknown source.

16.    As soon as Plaintiff learned his Facebook account was hacked and compromised, he attempted to contact Facebook to assist him.  Specifically, Plaintiff sent a message to Facebook representatives on April 20, 2020, April 24, 2020 and April 29, 2020 received no response.

17.    Plaintiff called, texted, emailed and mailed certain executives and employees of Facebook to assist him. They were: Tim Tickel, Shirley Gertkin and Mathias Zillman and called 650 543 4800.

18.    The hacker currently has control over Plaintiff's Facebook account and is sending messages to other users demanding money.  The hacker has changed Plaintiff's password and other credentials, so Plaintiff is effectively locked out of his account.

19.    Facebook will not assist Plaintiff in recovering his account from the hacker or provide Plaintiff any information on how has can recover his account.

## FIRST CAUSE OF ACTION

**Violation of Stored Communications Act, 18 U.S.C. §§ 2701, et seq.**

20.    The Stored Communications Act ("SCA") provides a private right of

action against anyone who "(1) intentionally accesses without authorization a facility

through which an electronic communication service is provided; or (2) intentionally

exceeds an authorization to access that facility; and thereby obtains, alters, or prevents

authorized access to a wire or electronic communication while it is in electronic storage

in such system . . .." See 18 U.S.C. §§ 2701(a) and 2707(a).

21.    Defendant is a "person" within the meaning of the SCA.

22.    The User Information stored by Facebook and compromised by the hacker

is encompassed within the definition of "electronic storage" under the SCA.

## SECOND CAUSE OF ACTION

### Violation of Stored Communications Act, 18 U.S.C. §§ 2702, et seq.

23.    Plaintiffs re-allege and incorporate by reference the allegations contained

in the paragraphs above as if fully set forth herein.

24.    Defendant Facebook is liable under the SCA (18 U.S.C. § 2702(a)) for

unlawfully divulging the contents of Plaintiff's communications to third parties,

including but not limited to whomever the hacker is sending communications or

information to while logged into Plaintiff's account.  This hacker controls the contents of

Plaintiff's Facebook account.

25.    The SCA prohibits a "person or entity providing an electronic

communication service to the public" from "knowingly divulge[ing] to any person or

entity the contents of a communication while in electronic storage by that service." (18

U.S.C. § 2702(a)).

26.    Facebook is a "person" within the meaning of the SCA.  It provides an

"electronic communication service" as that term is defined in the code.  The User

Information stored by Facebook and compromised by the hacker is encompassed

within the definition of "electronic storage" under the SCA.

27.     Accordingly, Plaintiffs request that the Court enter an injunction requiring

Facebook to immediately restore Plaintiff's access to his account and implement and

maintain reasonable security procedures to protect customers.

### THIRD CAUSE OF ACTION

**Intrusion Upon Seclusion**

28.     Plaintiffs re-allege and incorporate by reference the allegations contained

in the paragraphs above as if fully set forth herein.

29.     Plaintiff inputted his private User Information onto his individual Facebook

profile.

30.     Plaintiff was given a false sense of security in his private User Information

by believing they had control over their Facebook profile "privacy settings." Those

settings prompt users to select who can see their posts, their friend requests, their lists of

friends, who can locate their profiles using their designated email address and/or phone

number, and whether search engines outside of Facebook are permitted to link to their

profiles. The categories of individuals who are purportedly given access to the

aforementioned information are Facebook friends, "friends of [Facebook] friends," or the

public at large.

### FOURTH CAUSE OF ACTION

**Negligence**

8

31.     Plaintiff re-alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

32.     Facebook owed Plaintiff a legal duty to exercise reasonable care in safeguarding and protecting the User Information it collected and maintained of its users. This duty included, among other things, maintaining and testing Facebook's security systems and taking other reasonable security measures to protect and adequately secure the personal data of Plaintiff from unauthorized access and use. Facebook's security system and procedures for handling the personal User Information were intended to affect Plaintiff. Facebook was aware that by taking such sensitive information of users, it had a responsibility to take reasonable security measures to protect the data from being stolen and, in the event of theft, easily accessed.

33.     There is a very close connection between Facebook's failure to take reasonable security standards to protect its users' data and the injury to Plaintiff. If not for Facebook's negligence, the hacker would not have been able to steal Plaintiff's information and use it for their own purposes.

## FIFTH CAUSE OF ACTION

### Breach of Written Contract

34.     Plaintiff re-allege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

35.     In order to register as users of Facebook, Plaintiff was required to, and did, affirmatively assent to its Terms and Conditions and Privacy Policy (the "Agreement").

36.     The Agreement's provisions constitute a valid and enforceable contract

between Plaintiff and Facebook on the other hand.

37. Under the Agreement, Plaintiff transmitted sensitive personal information, including personally identifiable information, to Facebook in exchange for use of Facebook and Facebook's promise that it would not share that personal information with third parties, including hackers.

38. Specifically, the Agreement provides that "You own all of the content and information you post on Facebook, and you can control how it is shared through your privacy and application settings." Facebook breached this provision as alleged herein.

39. Facebook users effectively pay for Facebook's services through their provision of their sensitive personal information into Facebook's safekeeping.

40. A material consideration for Plaintiff's transmission of their sensitive personal information to Facebook is Facebook's promise to safeguard their sensitive personal information. As a result of Facebook's misconduct and breach of the Agreement described herein, Plaintiff's suffered damages.

41. Plaintiff did not receive the benefit of the bargain for which they contracted and for the transmission of their sensitive and unique personal information, which, as alleged above, has ascertainable value to be proven at trial.

**WHEREFORE**, Plaintiffs is entitled to damages, injunctive relief and equitable relief to remedy the above described misconduct.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs pray this Court for the following relief:

A. For an Order declaring Defendants' conduct as detailed above is violative of the law and enjoining Defendants from continuing these acts.

B. For a preliminary and permanent injunction ordering Facebook to restore Plaintiff's access to his hacked profile and allow him to retain access moving forward.

C. For a preliminary and permanent injunction ordering disgorgement by Defendants of all data collected by the hacker within ten (10) days upon request.

D. For compensatory, damages, and punitive damages in favor of Plaintiffs.

E. For costs of this action, including reasonable attorneys' fees and expenses.

F. For pre-judgment and post-judgment interest at the legal rate; and

G. For such other and further legal and equitable relief as this Court may deem just and proper.

## **JURY DEMAND**

Plaintiffs demand a trial by jury on all issues so triable.

Respectfully submitted,

Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous

support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

I agree to provide the Clerk's Office with any changes to my address where case related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: 5/6/2020

_____

Signature of Plaintiff, Leland Damner

Leland Damner

12

OUTBACK ADJUSTING AND INVESTIGATIVE SERVICES, LLC

6619 N. Scottsdale Rd.
Scottsdale, Arizona 85250
(480) 483 – 1001 / Fax (480) 452 – 0160
eMail: gotproof@cox.net
www.outbackinvestigations.com
PI License 1003811  Adj License 110696

May 6th, 2020


FACEBOOK, INC
1 Hacker Way
Menlo Park, CA 94025


RE:  Leland Damner v. Facebook, Inc


Dear Facebook:

Attached please find a draft complaint.  I am hoping this case can be resolved without the necessity to file it with the United States District Court, in the District of Arizona.

I am asking that my original account, with my photo on it, be removed and that my current account, without my picture on it, be removed as well.

Hackers have taken over my original account and have solicited money, posing as me, from my friends.  They have been successful twice.

Please respond by Friday, May 8, 2020.


Very Truly Yours,



Leland W. Damner
Plaintiff, Pro-Se
602 410 3417